UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DAVID C. GUDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:16-CV-79-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff David C. Gude ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find that remand is required for further consideration of the treating physician's opinion, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 2015, Plaintiff applied for SSI, alleging that he had been unable to work since March 1, 2015 due to bone cancer and stage-four leukemic lymphoma. (Tr. 215, 241). His application was initially denied, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 158-62, 165-66). On March 31, 2016, after a hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 94-108, 114-37). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, but the Appeals Council declined to review the case. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d

at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the application date; that Plaintiff had the severe impairments of leukemia, small lymphotic lymphoma, affective disorder, and anxiety disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 96-97). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: He can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments. He can occasionally climb ramps and stairs, stoop, kneel, crouch or crawl. He is limited to remembering and carrying out simple routine tasks and making simple work-related decisions. He is restricted from production pace tasks but would meet end of day goals. He is capable of frequent contact with supervisors and coworkers but only occasional contact with the general public.

(Tr. 99). At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 107). At Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as folding machine operator (*Dictionary of Occupational Titles* ("*DOT*") No. 208.685-014), garment sorter (*DOT* No. 222.687-014), and patcher (*DOT* No. 723.687-010). (Tr. 108). The ALJ concluded that Plaintiff was not under a disability between May 21, 2015, and the date of her decision (March 31, 2016). (Tr. 108).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ erred by failing to give a good reason for rejecting the treating physician's opinion that he would be absent from work one or two days a month; and (2) that the ALJ's RFC determination is too vague to allow meaningful review, because a limit to "light exertion" could have a variety of different meanings.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of

5

testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ Did Not Give Good Reasons for Discounting the Treating Physician's Opinion Regarding Absenteeism

Plaintiff's first argument is that the ALJ erred by failing to articulate good reasons for rejecting the opinion of his treating physician, Humza Waheed, that Plaintiff would be absent from work one or two days per month as a result of his impairments. The Court agrees.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 415.927(c)(2).[2] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). A treating physician's opinion that a claimant would miss work

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 416.920c(a).

6

due to his impairments is a medical opinion that is entitled to weight where it is supported by evidence in the record. *See Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998).

The ALJ may discount a treating physician's opinions if they are inconsistent or contrary to the medical evidence as a whole. *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). However, "[w]hen an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). *See also* 20 C.F.R. § 416.927(c)(2) (stating that the Social Security Administration "will always give good reasons in [the] notice of determination or decision for the weight [it] gives [the claimant's] treating source's medical opinion"). An ALJ's failure to give reasons for discrediting a treating doctor's opinion requires remand. *See Clover v. Astrue*, No. 4:07-CV-574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug.19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand."); *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand").

On January 12, 2016, Dr. Waheed filled out a mental RFC assessment form in which he was asked, *inter alia*, to "estimate, on the average, how many days per month your patient is likely to be absent from work as a result of his/her physical and/or mental impairments and/or his/her need for ongoing and periodic medical treatment and care for them." (Tr. 843). He indicated that Plaintiff would miss one or two days on average and that noted that Plaintiff had missed multiple appointments with him. (Tr. 843). On the other sections of the form, Dr. Waheed indicated that Plaintiff had few mental limitations, though he did find that Plaintiff would be limited in the ability

7

to perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances. (Tr. 841-44).

In the ALJ's decision, the ALJ noted that Dr. Waheed had a treating relationship with Plaintiff and discussed several aspects of Dr. Waheed's opinion. The ALJ stated, "[t]he undersigned gives considerable weight to the opinion of Dr. Waheed with the exception that the undersigned finds that the overall evidence demonstrates the claimant also has social limitations in addition to the opined limitations in concentration, persistence or pace as set out above in the residual functional capacity." (Tr. 105). The ALJ did not discuss Dr. Waheed's opinion regarding work absences.

The ALJ did not give any reasons for not giving weight to Dr. Waheed's opinion that Plaintiff would be absent from work one to two times per month, on average, due to his impairments. It is unclear whether the ALJ considered that opinion and rejected it for good reasons, considered it and rejected it for bad reasons, or did not consider it at all. Moreover, a review of the record suggests that the ALJ's decision not to incorporate this aspect of Dr. Waheed's opinion into the RFC may have been case-dispositive. At the hearing before the ALJ, when asked by Plaintiff's attorney what type of absences would be tolerated with the jobs the VE had identified, the VE stated, "no more than one day per month of the absence would be tolerated. Anything beyond that would cause the individual to be terminated due to excessive absenteeism." (Tr. 135-36). Thus, had the ALJ credited Dr. Waheed's opinion, it is possible that Plaintiff would have been found disabled.

In their briefs, the parties strongly disagree about whether the ALJ should have credited Dr. Waheed's opinion that Plaintiff would miss work, on average, one to two days per month. Plaintiff emphasizes medical records showing that Plaintiff has required multiple rounds of

chemotherapy; that Plaintiff's psychiatric condition required two inpatient hospitalizations; and that Plaintiff has regularly complained of fatigue and sleep problems. On the other hand, Defendant argues that Dr. Waheed did not attribute Plaintiff's absenteeism to the reasons described in Plaintiff's brief; that Plaintiff's cancer is in remission with no further chemotherapy treatments planned; that Plaintiff's hospitalizations occurred after he had abused his medications and likely would not be required in the future; and that Plaintiff's fatigue was not sufficiently severe to cause him to miss work.

The Court takes no position on which party's evidence regarding the supportability of Dr. Waheed's opinion is more persuasive. The regulations and the case law make clear that the question of what weight to give to a treating physician's opinion in light of the evidence in the record is for the ALJ, not the Court, to decide. Because the ALJ failed to make it clear that she considered Dr. Waheed's opinion regarding absenteeism and failed to give good reasons for discounting that opinion, and because the decision not to include Dr. Waheed's opinion on work absences in the RFC potentially affected the outcome of the case, remand for further consideration is required. *See Clover*, 2008 WL 3890497, at *12; *Anderson* 312 F. Supp. 2d at 1194.

### C. The RFC and the Hypothetical Question Posed to the Vocational Expert

Plaintiff's second argument is that the ALJ's RFC finding, and the question the ALJ posed to the VE, are too vague to allow meaningful review or to satisfy the specificity required by regulation and policy, because the ALJ framed her RFC finding in terms of "light work" and her question to the VE in terms of "light exertion," rather than setting out Plaintiff's sitting, walking, standing, lifting, pushing, or pulling limitations. As Plaintiff points out, Social Security Ruling 96-8p states:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The functions described in the referenced regulations include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching, as well as mental functions and ability to deal with environmental conditions. *See* 20 C.F.R. § 416.945. The ruling notes that "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." 1996 WL 374184, at *4.

Plaintiff also argues that because the definitions of "light work" in the regulations and in the *DOT* encompass multiple combinations of capabilities, it is unclear what combination of capabilities the ALJ found Plaintiff to have.[3] He further argues that because the definition of "light

---

[3] Light work" is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

"Light work" is defined in the *DOT* as follows:

Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand

work" in the *DOT* encompasses multiple combinations of abilities (and is not identical to the definition of light work in the regulations), it is unclear what combination of capabilities the VE had in mind when responding to the ALJ's hypothetical question about a person capable of "work at the light exertional level." (Tr. 133).

The Court agrees with Plaintiff that it is somewhat unclear from the RFC finding and the ALJ's decision as a whole whether the ALJ specifically made a determination about Plaintiff's sitting, standing, walking, lifting, carrying, pushing, and pulling abilities, as required by SSR 96-8p. The most reasonable reading of the ALJ's decision is likely that the ALJ found that Plaintiff was capable of all of the activities described in the definition of light work in the regulations (aside from those the ALJ specifically mentioned) and that Plaintiff was therefore capable of performing any combination of those abilities that the VE might have had in mind when answering the hypothetical question. However, because the case must be remanded for other reasons, the Court need not speculate about what the ALJ's RFC findings were, and it need not reach the question of whether the ALJ's decision to express the RFC in terms of "light work" would, standing on its own, require remand. When the ALJ revisits the question of Dr. Waheed's opinion (and thus Plaintiff's RFC) on remand, the ALJ should formulate an RFC that complies with SSR 96-8p by

---

> requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

*Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App'x C.
11

making clear Plaintiff's sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, and handling abilities. If the new RFC includes any limitations that may be more restrictive than those reflected in the question posed to the VE in the prior hearing, the ALJ may need to obtain additional VE testimony.

V. CONCLUSION

For the reasons set forth above, the Court finds that remand is required for further consideration of the treating physician's opinion. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2018.